USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: DEC 17 2007

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

    - v. -

ANTHONY RUMORE,

        Defendant.

- - - - - - - - - - - - - - - - x

INDICTMENT

07 Cr.

07 CRIM 1167

JUDGE SWAIN

## COUNT ONE
### (Hobbs Act Extortion)

The Grand Jury charges:

Background

1.   At all times relevant to this Indictment, the International Brotherhood of Teamsters (the "IBT" or "Teamsters") was a labor union comprised of members employed in a variety of industries.

2.   At all times relevant to this Indictment, Local 812 was a local labor union within the Teamsters organization and was comprised of several thousand members employed in the soft drink, brewery, needle trade, and industrial and textile industries in the greater New York City area.  The members of Local 812 were empowered to elect their own officers, devise their own structure, and vote on their own bylaws, compatible with the constitution and bylaws of the IBT.  All of the various industries in which Local 812 members were employed operated in interstate commerce.

3. At all times relevant to this Indictment, Joint Council 16 was a component of the Teamsters existing in the greater New York City area for the purpose of coordinating activities between the local Teamsters unions in the area and helping to solve problems and decide jurisdictional and judicial issues arising from the existence of multiple Teamsters local unions in the area.

4. From in or about 1988 until on or about September 10, 2004, ANTHONY RUMORE, the defendant, was the president of Local 812.

5. From in or about 1997 until on or about September 10, 2004, while serving as president of Local 812, ANTHONY RUMORE, the defendant, was the president of Joint Council 16.

The Extortion Scheme

6. At all times relevant to this Indictment, the administrative affairs of Local 812 were conducted by various officers. In addition to ANTHONY RUMORE, the defendant, who was the president, Local 812's officers included a secretary-treasurer, a recording secretary, a vice-president, and multiple trustees. In addition to conducting Local 812's administrative affairs, these officers also served as full-time business agents, with responsibility for representing the interests of Local 812's several thousand members in dealings with employers.

7. Local 812's officers were full-time employees of Local 812, with salaries paid by Local 812. For example, among other annual salaries paid to its officers in 2002, Local 812 paid ANTHONY RUMORE, the defendant, approximately $160,000, paid the secretary-treasurer approximately $160,000, and paid the vice-president and the recording secretary approximately $105,000 each. Other officers received lesser amounts. In addition, Local 812 paid the salaries of several full-time staff members. Local 812 funded its payment of these salaries largely through the collection of dues from its members.

8. It was understood by ANTHONY RUMORE, the defendant, and by the officers and employees of Local 812, that RUMORE's position as President of Local 812 and President of Joint Council 16 gave him the ability to adversely affect the employment of Local 812's officers and employees, including the ability to terminate their employment.

9. From at least in or about 1988 up to and including September 10, 2004, ANTHONY RUMORE, the defendant, used his control over Local 812's officers and employees to extort personal services from those officers and employees. Although frequently performed for him during business hours, the personal services that RUMORE extorted from Local 812's officers and employees were unrelated to any union business, and interfered with the officers and employees' ability to perform legitimate work on behalf of Local 812's members. RUMORE

demanded and obtained these services from Local 812's officers and employees in order to personally benefit himself and his family.

  10. Local 812's officers and employees provided the aforementioned personal services to ANTHONY RUMORE, the defendant, because they reasonably feared that RUMORE would cause them to suffer economic harm - including the loss of their employment with Local 812 - if they did not comply with RUMORE's demands. This fear was intentionally exploited by RUMORE to obtain the aforementioned personal services.

  11. Among the specific personal services that ANTHONY RUMORE, the defendant, extorted from the officers and employees of Local 812 (collectively, "Local 812 Employees") were the following:

    a. From at least in or about 1988, RUMORE directed Local 812 Employees to pick up RUMORE's daughters from their respective high schools on a daily basis and drive them home.

    b. In or about the early 1990s, RUMORE directed Local 812 Employees to spend approximately two weeks installing a new roof, skylight, and a deck on his house in Lakeview, Pennsylvania.

    c. On various occasions between in or about 1992 and in or about 1995, RUMORE directed a Local 812 Employee to travel to RUMORE's house in Lakeview,

        Pennsylvania – approximately 150 miles from New York City – to mow the lawn and/or clean the gutters.

d.    On several occasions in or about 1995, RUMORE directed a Local 812 Employee to follow in a separate car as RUMORE drove one of RUMORE's daughters approximately 130 miles from New York City to Mystic, Connecticut, where the daughter worked. RUMORE then left his own car with his daughter and directed the Local 812 Employee to drive RUMORE back to New York City.

e.    On or about August 2, 1999, RUMORE directed a Local 812 Employee to erect a tent for a social occasion in the backyard of RUMORE's father's house in Queens.

f.    On or about March 22, 2000, RUMORE directed Local 812 Employees to move personal belongings from his house in Lakeview, Pennsylvania, to space in a Local 812 building in Scarsdale, New York, that RUMORE unilaterally took over for personal storage.

g.    On various occasions in or about October 2000, RUMORE directed Local 812 Employees to run errands in connection with the upcoming wedding of RUMORE's daughter. These errands included

5

chauffeuring RUMORE's wife and daughter as they went to various stores, as well as picking up dresses and delivering them to RUMORE's family.

h. On or about November 21, 2000, RUMORE directed Local 812 Employees to go to the apartment of RUMORE's daughter, wait for the delivery of a wall unit, transport the wall unit up to the apartment in an elevator, and install the wall unit.

i. On or about July 11, 2001, RUMORE directed Local 812 Employees to collect pipes from a home improvement store, deliver them to RUMORE's father's house in Queens, and use the pipes to begin erecting a tent for a social occasion. On or about July 13, 2001, RUMORE directed Local 812 Employees to finish erecting the tent.

j. On or about October 30, 2001, RUMORE directed Local 812 Employees to move furniture from an apartment being vacated by RUMORE's daughter to an apartment into which she was moving.

k. On numerous occasions from at least in or about 2001 through at least in or about 2003, RUMORE directed Local 812 Employees to drive RUMORE, his wife, and his daughters to various medical appointments. This included numerous excursions

      in which Local 812 Employees were required to collect RUMORE and his family individually in New York City, drive them to a holistic doctor – also referred to as "the guru" – in Fairlawn, New Jersey, wait for them, and then drive them back to New York City.

l.   In or about November 2001, RUMORE directed Local 812 Employees to drive RUMORE and his family from New York to Baltimore, Maryland, to attend a wedding. One Local 812 Employee was directed to drive RUMORE and his family in one vehicle, while another Local 812 Employee was directed to follow in a second vehicle that was used to transport gowns for RUMORE's wife and daughters. After dropping RUMORE, his family, and their personal items in Baltimore, Maryland, the Local 812 Employees were directed to drive back to New York.

m.   On or about April 1, April 15, and May 9, 2002, RUMORE directed Local 812 Employees to empty the Queens home of RUMORE's recently deceased father and move the belongings to space in a Local 812 building in Scarsdale, New York, that RUMORE unilaterally took over for personal storage.

n.  On or about April 19, 2002, RUMORE directed a Local 812 Employee to drive RUMORE's daughter from Manhattan to a funeral parlor in Long Island and then back to Manhattan.

o.  On each day from in or about September 3, 2002 through in or about September 6, 2002, RUMORE directed Local 812 Employees to stay in RUMORE's family's apartment in lower Manhattan ("RUMORE's apartment") to monitor professional cleaners working on the apartment.

p.  On or about September 2002, RUMORE directed Local 812 Employees to remove rugs from RUMORE's apartment for cleaning. On or about December 18, 2002, RUMORE directed Local 812 Employees to reinstall the rugs in RUMORE's apartment.

q.  On or about each of December 18, 2000, December 18, 2001, and December 20, 2002, RUMORE directed Local 812 Employees to deliver and set up a Christmas tree at RUMORE's apartment.

r.  On numerous occasions in or about 2003, RUMORE directed Local 812 Employees to chauffeur RUMORE and/or his daughters. This included driving the daughters to yoga classes and to each other's homes in Manhattan, and driving while RUMORE and

8

      a daughter conducted several day-long searches for a new apartment for RUMORE.

s. On or about August 5, 2003, RUMORE provided a Local 812 Employee with approximately $650 and directed him to purchase an air conditioner and deliver it to RUMORE's apartment.

t. Between in or about April 2003 and in or about November 2003, RUMORE repeatedly directed Local 812 Employees to attempt to collect contributions from Local 812 members for a legal defense fund that RUMORE had established in order to defend himself in a disciplinary proceeding initiated against him by the Independent Review Board ("IRB"), a court-appointed entity that monitors the IBT.  On at least one occasion, angry that insufficient funds had been collected, RUMORE ordered the cancellation of all of the legitimate work that Local 812's business agents were engaged in on behalf of Local 812's membership so that the business agents could focus on RUMORE's demand that they collect money for RUMORE's legal defense fund.  In total, Local 812 Employees collected approximately $30,000 from Local 812's members for RUMORE's legal defense fund.

Statutory Allegation

12.  From at least in or about 1988 up to and including on or about September 10, 2004, in the Southern District of New York and elsewhere, ANTHONY RUMORE, the defendant, unlawfully, willfully, and knowingly did obstruct, delay, and affect commerce and the movement of an article and commodity in commerce, by extortion, to wit, RUMORE used his positions as President of Local 812 and President of Joint Council 16 to extort personal services from various employees of Local 812.

(Title 18, United States Code, Section 1951.)

## COUNT TWO
### (Embezzling Assets of a Labor Organization)

The Grand Jury further charges:

14.  The allegations contained in Paragraphs 1 through 13 are repeated and realleged as if fully stated herein.

15.  From at least in or about 1988 up to and including on or about September 10, 2004, in the Southern District of New York and elsewhere, ANTHONY RUMORE, the defendant, unlawfully, willfully, and knowingly, did embezzle, steal, abstract and convert to his own use, and the use of another, moneys, funds, securities, property, and other assets of a labor organization of which he was then an officer, and by which he was employed, directly and indirectly, to wit, RUMORE used his position as President of Local 812 and President of

Joint Council 16 to extort personal services from various employees of Local 812, thereby converting to his own use the services of Local 812's salaried employees and the union property used in connection with the performance of these services.

(Title 29, United States Code, Section 501(c).)

_____
FOREPERSON

_____
MICHAEL J. GARCIA
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

**UNITED STATES OF AMERICA**

- v -

**ANTHONY RUMORE,**

Defendant.

### INDICTMENT

07 Cr.

(Title 18, United States Code, Section 1951; Title 29, United States Code, Section 501(c))

MICHAEL J. GARCIA
United States Attorney.

**A TRUE BILL**

_____
Foreperson.

12/17/07
Filed Ind.
Obs, J