UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ANTHONY RUMORE | No. 07-Cr-1167 (LTS) |

MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS THE INDICTMENT

Defendant Anthony Rumore, by the undersigned counsel, respectfully moves to dismiss the indictment in the above-captioned matter. As explained in detail below, the indictment is critically defective in at least three respects. First, both counts are premised explicitly and overwhelmingly on conduct that is far beyond the five-year statute of limitations. Indeed, the government is seeking to punish Mr. Rumore for discrete acts of "extortion" and "embezzlement" reaching as far back as 1988. Simply conjoining a handful of more recent allegations with a series of long-stale, completed offenses cannot revive the time-barred allegations.

Second, the government's decision to lump multiple offenses together renders the indictment impermissibly duplicitous. This strategy – no doubt compelled by the government's desire to avoid immediate dismissal of individual counts on limitations grounds – illustrates precisely why prosecutors may not subsume numerous completed offenses under a single count. Each of the two counts in the indictment consists of at least twenty individual offenses, severely prejudicing Mr. Rumore's ability to mount a fair defense to these charges and impairing a sensible assessment of the jury's verdict.

Third, the government's theory of "embezzlement" is patently flawed. In the government's view, a supervisor who misallocates his subordinates' time has "embezzled" the "property" of the employer. That theory not only represents an unprecedented application of the criminal statute at issue here; it also violates long settled interpretive canons and decisions rejecting similarly inventive conceptions of an employer's "property."

## BACKGROUND

On December 17, 2007, the grand jury returned a two-count indictment charging Mr. Rumore with extortion, in violation of 18 U.S.C. § 1951 (Count One), and embezzlement of labor union assets, in violation of 29 U.S.C. § 501(c) (Count Two). As alleged in the indictment, Mr.

2

Rumore served as president of Teamsters Local 812 "[f]rom in or about 1988 until on or about September 10, 2004," Indictment ¶ 4, and as president of Joint Council 16 "[f]rom in or about 1997 until on or about September 10, 2004," *id.* ¶ 5. The indictment alleges that Mr. Rumore used those leadership positions to "extort" personal services from employees of Local 812, which (the indictment claims) also constituted "embezzlement" of union "property."

The indictment enumerates 20 instances in which Mr. Rumore allegedly directed union employees to perform those personal services. See Indictment ¶ 11. The first such instance took place "in or about 1988," *id.* ¶ 11a; the most recent alleged instance occurred "in or about 2003," *id.* ¶ 11r. The overwhelming majority of the offense conduct – all but three of the 20 enumerated categories – is alleged to have taken place *before* December 17, 2002, which is the operative date for statute of limitations purposes.

The indictment claims that union employees performed these services because they feared that refusing to do so would put their employment in jeopardy. Indictment ¶ 10. The indictment does not specify how, by whom, or even *whether* any such threat was conveyed, nor does the indictment otherwise articulate a specific basis for any employee's alleged fear. Indeed, the indictment does not name or even indirectly identify a single one of the numerous union employees against whom these various acts of "extortion" allegedly were directed across the fifteen-plus years of Mr. Rumore's tenure as union president.

Nevertheless, the indictment charges all 20 alleged instances – committed against any number of union employees from 1988 to 2003 – as single counts of extortion and embezzlement.

I.  **All Acts Of Extortion And Embezzlement Alleged To Have Occurred Before December 17, 2002, Are Barred By The Statute Of Limitations**

It is beyond dispute that, because neither of the charged offenses, 18 U.S.C. § 1951 and 29 U.S.C. § 501(c), contains a specific limitations period, the general five-year limitations period set

3

forth in 18 U.S.C. § 3282 governs. See 18 U.S.C. § 3282 ("Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found . . . within five years next after such offense shall have been committed."). However, the overwhelming majority of the acts alleged – at least 15 of the 20 items in the laundry list of events purportedly constituting acts of extortion and embezzlement – are time-barred and therefore must be dismissed from the indictment.

That much is plain on the face of the indictment. The indictment candidly admits that some of these alleged acts occurred "at least" as far back as 1988, Indictment ¶ 11a – nearly *two decades* before the indictment was returned on December 17, 2007. Many other allegations are likewise fully stale. For example, the indictment alleges that Mr. Rumore caused union employees to participate in a home improvement project "[i]n or about the early 1990s," *id.* ¶ 11b; to help put up a tent at his father's house "[o]n or about August 2, 1999," *id.* ¶ 11e; and to "run errands" for Mr. Rumore's family "[o]n various occasions in or about October 2000," *id.* ¶ 11g. See also *id.* ¶¶ 11c, 11d, 11f, 11h, 11i, 11j, 11l, 11m, & 11n (alleging conduct entirely beyond the limitations period). Several other allegations include at least some time-barred conduct. See *id.* ¶¶ 11k, 11q. All told, only three subparagraphs in the government's litany of offenses are based entirely on conduct that is within the limitations period. See *id.* ¶¶ 11r, 11s, 11t.

Indeed, this indictment presents a textbook example of why statutes of repose are essential to the fundamental fairness of our criminal process. "Statutes of limitations are designed 'to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past.'" *United States* v. *Morgan*, 380 F.3d 698, 703 (2d Cir. 2004) (quoting *Toussie* v. *United States*, 397 U.S. 112, 114-15 (1970)). This indictment is rife

4

with allegations so distant that Mr. Rumore will have little chance of mounting a full and fair defense to the government's charges. For example, the government would have Mr. Rumore recall whether "on several occasions in or about 1995" he asked a union employee to drive him back to New York after dropping his daughter off in Connecticut. Indictment ¶ 11d. Moreover, because the essential predicate of the government's "extortion" and "embezzlement" theories is that Mr. Rumore *forced* his co-workers to perform such tasks, Mr. Rumore also would be required to recall the precise circumstances surrounding each allegation. Which co-worker or co-workers performed these tasks on which of "several occasions"? How exactly did Mr. Rumore phrase his request to the co-worker? What did the co-worker say in response? In a case where the government would have Mr. Rumore's liberty turn on the distinction between a "favor" and a "demand," the burdens of defending against long-stale allegations are especially pernicious.

Not surprisingly, the indictment itself fails to supply many of the crucial details that would be necessary even to begin to mount an effective defense to such charges. Most notably, the indictment fails to identify – by name, title, or otherwise – a single employee from whom Mr. Rumore supposedly "extorted" personal services, leaving the defendant to wonder which of the scores of individuals who worked for Local 812 during his tenure might possess relevant information. Nor does the indictment identify any specific conversation or statement in support of the claims that the unnamed employees "reasonably feared that RUMORE would cause them to suffer economic harm . . . if they did not comply with RUMORE's demands" and that Mr. Rumore "intentionally exploited" such fear. Indictment ¶ 10. Likewise, several of the indictment's more salacious allegations are untethered to a particular date at all, leaving Mr. Rumore to wonder precisely when these acts are alleged to have occurred. See *id.* at ¶¶ 11b ("[i]n or about the early 1990s"), 11c ("[o]n various occasions between in or about 1992 and in or about 1995"); 11d ("[o]n

5

several occasions in or about 1995"); 11k ("[o]n numerous occasions from at least in or about 2001 through at least in or about 2003"). That lack of detail is disturbing in its own right, but, more important for present purposes, it illustrates how "the passage of time" inevitably "erode[s] memories," renders "witnesses and other evidence unavailable," and puts the defendant at a fundamentally unfair disadvantage. *Stogner* v. *California*, 539 U.S. 607, 631 (2003).

Inclusion in the indictment of a handful of incidents that fall (barely) within the limitations period cannot revive the time-barred conduct. Unlike ongoing crimes such as conspiracy – which the government has not charged – each of the expired acts was a "completed" offense of extortion or embezzlement before December 17, 2002. See 18 U.S.C. § 1951(c) ("The term 'extortion' means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."); 29 U.S.C. § 501(c) (punishing "any person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use, or the use of another, any of the moneys, funds, securities, property, or other assets of a labor organization of which he is an officer, or by which he is employed"). Indeed, both statutes expressly define their respective crimes as the obtaining of property "from another," making the unit of prosecution any single act of obtaining from any single victim. Here, the indictment does not allege (nor could it) that Mr. Rumore committed the final element of the charged offense only some time after December 17, 2002. Accordingly, the offenses were "complete" – and the limitations period began to run – when the individual acts in question were committed. See *United States* v. *Acevedo*, 229 F.3d 350, 355 (2d Cir. 2000).

The government evidently believes that it can revive its otherwise time-barred, completed offenses by lumping those in a single count with at least one offense that is not time barred. That is wrong. The very purpose of a statute of limitations is "to *limit* exposure to criminal prosecution

6

to a certain *fixed* period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions." *Toussie*, 397 U.S. 114 (emphasis added). Exposure is neither "fixed" nor "limited" where the government can resurrect otherwise extinguished liability simply because it alleges that the defendant has committed a more recent offense. Moreover, it is well settled that "criminal limitations statutes are to be liberally interpreted *in favor of repose*," not subjected to "exceptions" that swallow the rule whole. *Id.* at 115 (internal quotation marks and citation omitted).

Not surprisingly, courts have rejected attempts to evade the statute of limitations by lumping time-barred, completed conduct with a more recent completed offense. In *United States v. Yashar*, 166 F.3d 873 (7th Cir. 1999), for example, the court held that the government may not elude the limitations period simply by alleging that the defendant committed a series of individually completed offenses, some of which were not individually time barred. "[T]he limitations period begins to run once all elements of the offense are established," the court explained, "regardless of whether the defendant continues to engage in criminal conduct." *Id.* at 879-80. Were it otherwise, the court observed, "a prosecutorial decision regarding the scope of the charge would determine the running of the limitations period. In that manner, the statute of limitations, designed as a control on governmental action, would instead be defined by it." *Id.* at 879; see *ibid.* (explaining that "[v]irtually any criminal actions that extend over time could fall within [the government's] expansive definition depending upon how a prosecutor chose to charge a case," rendering "the limitations period . . . virtually unbounded").[1] Other courts (including one

---

[1] *Yashar* further illustrated the potential for abuse of the government's rule:

in this district) have reached the same conclusion. See *United States* v. *Jaynes*, 75 F.3d 1493, 1506-07 (10th Cir. 1996) ("scheme or pattern of illegal conduct" does not alter the limitations period for time-barred, completed offenses); *United States* v. *Rivlin*, No. 07-CR-524(SHS), 2007 WL 4276712 (S.D.N.Y. Dec. 5, 2007), at *5 (rejecting government's assertion that time-barred acts of embezzlement could be prosecuted alongside current allegations, "regardless of how many times an individual defendant may have violated the statute or whether the defendant engaged in an on-going course of criminal conduct."). And, as the Seventh Circuit observed in *Yashar*, the Second Circuit has taken a similarly dim view of the government's attempt to treat time-barred, completed offenses as part of a single offense of conviction (for restitution purposes) by claiming all acts were part of a "continuing course of conduct." *Yashar*, 166 F.3d at 878 (citing *United States* v. *Silkowski*, 32 F.3d 682 (2d Cir. 1994)).[2]

---

> Under the government's argument, [the] charging decision could delay the running of the limitations period on the discrete offenses. For instance, a series of drug sales could be charged as a single scheme. The government could then wait to prosecute until well beyond five years after the initial drug sales, as long as at least one overt act occurred within the last give years, and regardless of whether that one act constituted an element of the charged crime.

*Id.* at 879. That prediction has come to pass here, where the government has charged Mr. Rumore with more than a dozen acts of extortion and embezzlement reaching back nearly 20 years, based simply on the allegation that he committed a handful of similar acts more recently.

[2] It is no answer to claim that either count constitutes a "continuing offense," as the Supreme Court defined that term in *Toussie*. Neither the "explicit language" of these statutes nor the "nature of the crime[s]" would support – much less "compel" – such a conclusion. *Toussie*, 397 U.S. at 115. Our research has revealed no decision suggesting that discrete acts of extortion directed at numerous victims across many years could be deemed a "course of conduct . . . 'set on foot by a single impulse and operated by an unintermittent force' until the ultimate illegal objective is finally attained." *Id.* at 136 (quoting *United States* v. *Midstate Co.*, 306 U.S. 161, 166 (1939)). The same is true for the government's embezzlement theory; indeed, several decisions interpreting similar embezzlement statutes have expressly rejected that argument. See *Silkowski*, 32 F.3d at 690 (noting that "the United States concedes . . . *as it must*" that embezzlement under 18 U.S.C. §

8

## II. The Indictment Is Impermissibly Duplicitous

Even if the government could successfully evade the statute of limitations by lumping multiple completed offenses together in a single count, that strategy renders the indictment fatally defective in yet another regard. It is well settled that "[a]n indictment is impermissibly duplicitous where: 1) it combines two or more distinct crimes into one count . . ., and 2) the defendant is prejudiced thereby." *United States* v. *Sturdivant*, 244 F.3d 71, 75 (2d Cir. 2001) (citing *United States* v. *Murray*, 618 F.2d 892, 896 (2d Cir. 1980)). As explained below, this indictment – which combines *at least* 20 discrete acts of alleged extortion and embezzlement into a single count under each statute – is paradigmatically duplicitous, and the prejudice to Mr. Rumore is palpable.

There can be no doubt that the indictment "combines two or more distinct crimes into one count." *Sturdivant*, 244 F.3d at 75. As explained at length above, each subparagraph enumerating Mr. Rumore's alleged offenses articulates at least one discrete, complete offense of extortion or embezzlement. See Indictment ¶¶ 11a-t. The government plainly could have charged any of these subparagraphs (and perhaps also the individual acts within many of the subparagraphs) as individual counts.[3] Accordingly, the only question that remains is whether Mr.

---

641 is not a continuing offense) (emphasis added); *Rivlin*, 2007 WL 4276712 at *5 (holding that embezzlement under 18 U.S.C. § 664 is not a continuing offense); see also *Yashar*, 166 F.3d at 876 ("The government agree[s] that [embezzlement/ receipt under 18 U.S.C.] § 666 is not a continuing offense as that term is defined in *Toussie*.").

[3]The government's insertion of a subject heading calling the alleged acts of extortion a "scheme" (see Indictment ¶¶ 5-6) does not cure this defect. While the cases make clear that multiple offenses "may be charged in a single count if those acts could be characterized as part of a single continuing scheme," *United States* v. *Tutino*, 883 F.2d 1125, 1141 (2d Cir. 1989), simply affixing the label does not make it so. Were it otherwise, the government could avoid any duplicity challenge simply by making an unsupported averment that various offenses constitute a "scheme." Significantly, the indictment here did not charge a conspiracy or other "scheme"

9

Rumore will be prejudiced by the government's decision to lard both counts with numerous offenses.

That prejudice is clear and overwhelming, for at least three reasons. *First*, the government's charging strategy allows it to prosecute Mr. Rumore for long-stale acts, many of which would be fully two decades old before this case goes to trial. Even if the indictment could be read to avoid a direct violation of the statute of limitations, the delay in bringing such allegations will dramatically impair Mr. Rumore's ability to mount an effective defense against both the old and more recent offenses alike. With respect to the former, as explained above, memories fade, witnesses become unavailable, and evidence of innocence is lost. With respect to the latter, the jury will be encouraged to infer from Mr. Rumore's relatively limited ability to defend against the old charges that he must have had the propensity to commit the more recent ones as well. Cf. Fed. R. Evid. 404(b) ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."). In short, the duplicitous indictment raises the very real risk that Mr. Rumore will be convicted of long-stale offenses that the government could not charge separately without running afoul of the statute of limitations. It is difficult to imagine more immediate and severe prejudice.

*Second*, inclusion of multiple offenses under each count will create "uncertainty [regarding] whether a general verdict of guilty conceals a finding of guilty as to one crime and a

---

offense. Cf. *Sturdivant*, 244 F.3d at 76 (dismissal of conspiracy count gave rise to duplicity challenge); *Tutino*, 883 F.2d at 1141 (permitting duplicitous indictment because both offenses were subsumed within conspiracy). What is more, the indictment is clear on its face that the various acts alleged were separated in time (often, it would appear, by several years), committed against any number of different victims, and aimed at a variety of purposes. In any event, even if the "scheme" label is all that is required to salvage the extortion count, the indictment does not even purport to call the embezzlement count a "scheme."

10

finding of not guilty as to another." *United States v. Margiotta*, 646 F.2d 729, 733 (2d Cir. 1981) (citing *United States v. Murray*, 618 F.2d 892, 896 (2d Cir. 1980)). This indictment invites jurors simply to choose among the 20-plus offenses enumerated without necessarily reaching unanimity with respect to any particular offense. That risk is particularly acute here, where the subsumed offenses span many years, involve numerous other individuals, and implicate any number of objectives. Unlike cases where a common defense might be sufficient to answer every offense included under a single count, this case likely will require the defense to offer any number of responses to the smorgasbord of allegations. Thus, one might reasonably expect that jurors will react differently to specific pieces of evidence or particular allegations, magnifying the all-too-real possibility that individual jurors will simply choose among the enumerated offenses before rendering a verdict on either count.

*Third*, and relatedly, the duplicitous indictment may well deprive Mr. Rumore of "the basis for appropriate sentencing" in the event of a conviction. *Margiotta*, 646 F.2d at 733. Even if one assumes that jurors properly render a unanimous verdict with respect to a particular subsumed offense, permitting the government to lump numerous offenses under a single count may shield the extent to which the government has *failed* to prove its case. While courts are free to consider certain conduct beyond the offense of conviction in determining an appropriate sentence, surely it would be important to know the proportion and severity of the charged conduct that actually formed the basis of the jury's decision. Such knowledge would be particularly relevant here, where the indictment includes a number of allegations that – even if proven to the government's satisfaction – cannot possibly bear the level of culpability typically associated with the labels "extortion" and "embezzlement." *E.g.*, Indictment ¶ 11q ("deliver and set up a Christmas tree"); ¶ 11m (help "move the belongings" of Mr. Rumore's "recently deceased father"). A duplicitous

11

indictment should not be allowed to impair Mr. Rumore's ability to demonstrate at sentencing that the bulk of the government's charges were unproven and the severity of the offense conduct was inflated.

### III. The Indictment Fails To Allege A Legally Cognizable Theory Of Embezzlement

Count two of the indictment charges that the very same acts by which Mr. Rumore "extorted" personal services from union employees also constituted "embezzlement" of union "property," in violation of 29 U.S.C. § 501(c). That remarkable – and, so far as we can determine, unprecedented – theory of embezzlement under Section 501(c) is legally flawed. By asserting that union employees' time is the union's "property" in the sense contemplated by this criminal embezzlement statute, the indictment stretches common sense and settled principles of statutory interpretation past the breaking point. The government's theory also overlooks decisions that have rejected such a broad interpretation of employers' "property" in analogous circumstances. Accordingly, count two must be dismissed in its entirety.

It is well settled that, where a federal *crime* is involved, federal courts may not accept "evolving" concepts of "property." Cf. *United States* v. *Hudson and Goodwin*, 11 U.S. 32, 33 (1812) (no federal common law of crimes). Rather, courts must give "property" its traditional meaning and construe criminal statutes to reach only those objectives squarely within that established understanding. *Evans* v. *United States*, 504 U.S. 255, 264 (1992). The government's theory – that employees' time is a "property" interest that is "embezzled" whenever a defendant directs co-workers to pursue objectives outside those of the organization – violates those principles in several respects.

Most obviously, the government's theory defies simple common sense. Statutory terms must be given their "ordinary or natural meaning," *Smith* v. *United States*, 508 U.S. 223, 228

12

(1993), but one would not ordinarily say that an employee's time is the employer's "property" when it is spent in pursuit of personal objectives. The task at hand is not whether one could *conceivably* construe terms to reach particular conduct, but whether those actions fall squarely within their *customary* definition. See *Watson v. United States*, 128 S. Ct. 579, 583 (2007) ("The government may say that a person 'uses' a firearm simply by receiving it . . ., but no one else would."). Contending that every minute of an employee's day is the employer's "property" in the traditional sense strays far beyond that term's customary definition.

Moreover, "[l]anguage . . . cannot be interpreted apart from context. The meaning of a word that appears ambiguous if viewed in isolation may become clear when the word is analyzed in light of the terms that surround it." *Smith*, 508 U.S. at 229. Here, even if employees' time could be said to be the union's "property" in some sense, it could not be the kind of property that is "embezzled" within the traditional and settled meaning of *that* term. That is, an abstract determination that employees' time could be defined as the employer's property does not compel the conclusion that the diversion of that time constitutes "embezzlement." To the contrary, one must *define* the "property" interest in light of the traditional understandings of what "embezzlement" means. Tellingly, we are aware of no decision in which 29 U.S.C. § 501(c) has been read to hold individuals criminally responsible for directing employees to perform actions that are alleged to be for personal gain.

The absence of such cases should come as no surprise, because the sweep of the government's logic is truly breathtaking. Under the government's theory, any time a supervisor directs a subordinate to perform a task outside the scope of the latter's employment, the supervisor has committed an act of embezzlement. Consequently, any number of actions we customarily think of as matters of civil law would be, so long as a supervisor's self-serving action caused some

13

interference with the employee's job duties, subject to criminal prosecution. See, *e.g.*, 42 U.S.C. 2000e-2(a)(1) (sexual harassment); *Weinstein* v. *Hotel Acquisitions Corp.*, 43 A.D.3d 917, 918 (N.Y.A.D. 2007) (tortious interference with employment contract); *Rutan* v. *Republican Party of Illinois*, 497 U.S. 62, 74 (1990) (retaliation for employee's political affiliation); *Stallings* v. *U.S. Electronics, Inc.*, 270 A.2d 188 (N.Y.A.D. 2000) (intentional infliction of emotional distress).[4] Indeed, the rule of lenity prohibits precisely such novel expansions of a criminal statute. See *United States* v. *Lanier*, 520 U.S. 259, 266 (1977) ("the canon of strict construction of criminal statutes . . . ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered.").

What is more, to the extent courts in this jurisdiction have had occasion to consider whether employers hold a legally cognizable "property" interest in their employees' time, they have declined to adopt that broad understanding. For example, in *In re Subpoenas to Local 478*, 708 F.2d 65 (2d Cir. 1983), the court was urged to hold that employers have a "property" interest in their employees' time sufficient to afford the employers standing to appeal the denial of motions to quash subpoenas issued to their employees. The union there advanced precisely the same theory the government clings to here – namely, that the employer holds "a property interest in employees' time and attention" and in preventing the resulting "disruption of its business." *Id.* at 72. The court squarely rejected that argument, holding that adopting such an "amorphous" conception of property would "swallow the rule" limiting standing to those with a concrete, legally cognizable interest in the proceedings. *Ibid.*; see also *id.* at 73 (noting that theory of property

---

[4] When Congress intends to criminalize actions that traditionally have incurred only civil remedies, it does so expressly. See, *e.g.*, 18 U.S.C. § 1513(e) (punishing "interference with the lawful employment or livelihood of any person, for providing to a law enforcement officer any truthful information relating to the commission . . . of any Federal offense").

"lacks a limiting principle"). See also *All Aire Air Conditioning* v. *City of New York*, 979 F. Supp. 1010, 1015-16 (S.D.N.Y. 1997) (holding that employers lack a cognizable property right in employees' time, such that they may seek redress for deprivation caused by government enforcement action); cf. *Intel Corp.* v. *Hamidi*, 71 P.3d 296, 308 (Cal. 2003) ("Nor may Intel appropriately assert a *property* interest in its' employees' time.").

In sum, the government may believe that Mr. Rumore acted improperly in directing the activities of union employees, but he did not thereby embezzle union "property." Count two of the indictment must therefore be dismissed.

## CONCLUSION

For the reasons stated above, the acts alleged to have occurred before December 17, 2002, are time-barred and must be dismissed. In addition, the indictment is impermissibly duplicitous and must be dismissed. Moreover, count two of the indictment states a legally defective theory of embezzlement under 29 U.S.C. § 501(c) and must be dismissed.

Dated: April 30, 2008
New York City, New York

Respectfully submitted,

*/s/ Thomas P. Puccio*

Thomas P. Puccio, Esq.
Law Offices of Thomas P. Puccio
Attorney for Anthony Rumore
230 Park Ave, Suite 301
New York, NY   10169
(212) 883-6383

TO:   Michael A. Levy
      Assistant United States Attorney
      Southern District of New York
      1 St. Andrews Plaza
      New York, NY 10007

15