# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

—————————————————— )
)
)
UNITED STATES OF AMERICA )
)     No. 07-Cr-1167 (LTS)
)
v. )
)
ANTHONY RUMORE )
)
)
—————————————————— )

## DEFENDANT'S REPLY MEMORANDUM
## IN SUPPORT OF MOTION TO DISMISS THE INDICTMENT



Defendant Anthony Rumore, by the undersigned counsel, respectfully submits this reply memorandum in support of his motion to dismiss the indictment in the above-captioned matter.

The government's opposition does nothing to cure the glaring defects in this indictment. For starters, the government *concedes* that the vast majority of acts of embezzlement alleged in Count Two are time-barred. The government cannot blunt the force of that concession by claiming that it will successfully introduce evidence of the time-barred conduct at trial and offering to submit to a limiting instruction – matters that will be properly addressed (if at all) at trial.

The government's effort to salvage the time-barred allegations in Count One fares no better. Contrary to the government's assertion, the Second Circuit has *not* held that extortion is a "continuing offense" for limitations purposes, and even those jurisdictions that have so held would never recognize the acts alleged here as a single offense. On its face, the indictment alleges a variety of completed offense conduct against numerous unidentified victims across a period of 16 years, and the government cannot simply recast those allegations to avoid the statute-of-limitations consequences of charging such long-stale conduct. Notably, the government does not even mention the decisions cited in our initial motion to dismiss that have rejected precisely this kind of end-run around the limitations period.

Nor can the government justify this patently duplicitous indictment by misstating our position or by claiming that the various offense conduct alleged falls within a single "scheme." None of the cases upon which the government relies can bear such weight; to the contrary, they illustrate that the government here has stretched the concept of a continuing scheme far beyond reason.

Finally, the government does not dispute that the legal theory it advances in Count Two – *i.e.*, that Rumore "embezzled" the time of union employees – represents an unprecedented application of 29 U.S.C. § 501(c). Even so, the government simply ignores established principles of statutory interpretation, which weigh heavily against such novel expansions of a criminal statute. And the government likewise ignores decisions from this jurisdiction holding in analogous circumstances that employers do not hold a legally cognizable "property" interest in employees' time.

## I.    All Acts Of Extortion And Embezzlement Alleged To Have Occurred Before December 17, 2002, Are Barred By The Statute Of Limitations

### A.    The Government Concedes That The Bulk Of The Allegations Contained In Count Two Are Time-Barred

The government expressly (and correctly) concedes that acts of embezzlement charged in Count Two that allegedly took place before December 17, 2002, are time barred. Opp. 3 ("[I]n the absence of clear Second Circuit authority . . . the Government is prepared – for the purposes of this case and with respect to Count Two only – to proceed as though the charged conduct that occurred prior to December 17, 2002, is time-barred."). Accordingly, those portions of the indictment alleging that Rumore misappropriated union assets before December 17, 2002, must be stricken. See Indictment ¶ 14 (stating that all allegations made in support of Count One "are repeated and realleged as if fully stated" in support of Count Two); *id.* at ¶ 15 (alleging that Rumore embezzled union assets "[f]rom at least in or about 1988 up to and including on or about September 10, 2004").

Nevertheless, the government argues that "[t]he impact of this concession . . . will be minimal" because – the government claims – "evidence of the time barred conduct . . . should

3

still be admissible at trial." Opp. 4. That is no answer: So long as the time-barred acts are alleged in the indictment, they are subject to dismissal. Nor is there a legal basis for the government's remarkable (and unsupported) claim that its theory of admissibility and willingness to permit a limiting instruction "moots" the motion to dismiss. Opp. 2, 10. If the government truly wishes to "moot" the issue, it is should seek a superseding indictment that deletes the admittedly stale allegations. Simply asserting that the government possesses other means of shoehorning time-barred conduct into this case cannot nullify a motion to dismiss – particularly where the government has *conceded* that the motion is valid. Likewise, this Court should ignore the government's obviously premature attempt to determine the admissibility of this evidence (under Rule 404(b) or otherwise) – just as it would ignore a defense request to declare such evidence *inadmissible* at this juncture.

**B.    The Government Cannot Salvage Count One By Labeling It A "Continuing Offense"**

While the government acknowledges that it cannot fit a string of alleged conduct spanning many years into a single count of *embezzlement*, it nevertheless insists that the very same actions constitute a single "continuing offense" of *extortion*. That is wrong. Contrary to the government's assertions, the Second Circuit has not held that extortion is a "continuing offense" for limitations purposes; even if it had, the government offers no authority (because none exists) holding that a variety of allegedly extortionate acts against numerous unidentified victims, separated in time over a period of some 16 years, could possibly constitute a single "continuing offense."

4

For starters, the government overstates the holding in *United States* v. *Smith*, 198 F.3d 377 (2d Cir. 1999), as establishing that extortion is "a continuing offense for purposes of the statute of limitations." Opp. 3. *Smith* concerned whether extortionate conduct that continues over a period of time can properly give rise to *venue* in a particular jurisdiction. It did not purport to decide whether that analysis should govern the statute of limitations analysis. As the Second Circuit has recognized, "[r]ules governing venue and limitations serve distinct purposes," *United States* v. *Tannenbaum*, 934 F.2d 8 (1991), and this Court should reject the government's invitation to elide that distinction. What is more, at least one court of appeals has expressly rejected the argument that the same "continuing offense" analysis that applies to the venue statute, 18 U.S.C. § 3237, should control for statute of limitations purposes. See *United States* v. *Reitmeyer*, 356 F.3d 1313, 1323 (10th Cir. 2004) ("the 'continuing offense' analysis for venue purposes is 'obviously different' from the 'continuing offense' analysis for statute of limitations") (quoting *United States* v. *Dunne*, 324 F.3d 1158, 1166 (10th Cir. 2003)). Indeed, when defining the basic parameters of a "continuing offense," the Supreme Court expressly distinguished broader interpretations adopted in the venue context. *Toussie* v. *United States*, 397 U.S. 112, 121 n.16.

Even assuming that extortion under the Hobbs Act *can* be a continuing offense, the government is wrong to suggest that the acts alleged here – which involve a wide variety of conducct against any number of unidentified victims, separated by significant periods of time and spanning 16 years – could constitute a single offense for limitations purposes. Notably, the government cannot point to a single case where such far-ranging conduct has been lumped into one "continuing offense." Even the cases from other circuits that *Smith* cited bear no reasonable

5

resemblance to events alleged here. In *United States Textiles, Inc.* v. *Anheuser-Busch Cos.*, 911 F.2d 1261, 1264 (7th Cir. 1990), the extortionate conduct in question was a series of shipments under a single contract between two identified parties over (at most) a 17-month period. Similarly, *United States* v. *Bucci*, 839 F.2d 825, 826-27 (1st Cir. 1988), involved eight payments by one identified victim under a single allegedly extortionate contract over a 15-month period. There is, in short, no authority suggesting that the acts alleged here could fit within any reasonable definition of a "continuing offense."

That is hardly surprising, because the Supreme Court has cautioned that "the doctrine of continuing offenses should be applied in only limited circumstances" – *i.e.*, where "the *explicit language* of the substantive criminal statute *compels* such a conclusion or the nature of the crime involved is such that Congress *must assuredly* have intended that it be treated as a continuing one." *Toussie*, 397 U.S. at 115 (emphasis added). The government points to no indication – because none exists – that Congress "explicitly" or " assuredly" intended to permit the government to charge a series of twenty-some disparate events, which were directed at different victims, separated by months or years, and spanning more than a decade and a half, as a single "offense" of extortion.

In an attempt to obscure that fact, the government attempts to recast this "offense" as involving the extortion of "the same thing of value" from "the same small group of individuals." Opp. 7. But no such allegations actually appear in this indictment, which lists any number of "things of value" and does not identify a single victim. Just as the defense cannot challenge the sufficiency of an indictment based on facts extrinsic to the indictment, the government must be held to the actual language of the document.

6

Finally, the government does not even mention – much less confront – the cases that have rejected similar attempts to evade the statute of limitations by lumping time-barred, completed conduct with a more recent completed offense. As we explained in our initial motion (at 7-8), several other courts (including one in this district, in an embezzlement case, no less) have rejected such end-runs. See *United States* v. *Yashar*, 166 F.3d 873, 879-80 (7th Cir. 1999); *United States* v. *Jaynes*, 75 F.3d 1493, 1506-07; *United States* v. *Rivlin*, No. 07-CR-524(SHS), 2007 WL 4276712 (S.D.N.Y. Dec. 5, 2007), at \*5. Tellingly, the government offers no response.

## II.    Both Counts Of The Indictment Are Impermissibly Duplicitous

As we explained in our initial motion (at 9-12), the government's attempt to load multiple stale allegations into a single count each of extortion and embezzlement also renders the indictment impermissibly duplicitous. The government's principal response is to misstate our position. We did *not* claim that "a charge is duplicitous simply because the Government 'could have charged . . . the individual acts [therein] . . . as individual counts.'" Opp. 5 (quoting Motion to Dismiss at 9). Rather, we correctly quoted the governing Second Circuit standard, which states that "[a]n indictment is impermissibly duplicitous where 1) it combines two or more distinct crimes into one count . . . , *and* 2) the defendant is prejudiced thereby." *United States* v. *Sturdivant*, 244 F.3d 71, 75 (2d Cir. 2001) (emphasis added); see Motion to Dismiss at 9 (quoting same). Accordingly, the government's suggestion that the Second Circuit has "explicitly rejected" this standard is false.

The government does not respond to that standard, because this indictment plainly fails to meet it. The government does not dispute – nor could it – that each count combines numerous

7

offenses of extortion or embezzlement.   Nor, remarkably, does the government dispute that Rumore will be severely prejudiced if he is forced to defend against these acts.   See Motion to Dismiss at 10-12 (describing prejudice).

Instead, the government claims simply that the acts alleged "'could be characterized as part of a single continuing scheme.'"   Opp. 6 (quoting *United States* v. *Aracri*, 968 F.2d 1512, 1518 (2d Cir. 1992)).   We acknowledged that line of cases in our initial motion (at 9-10 n.3), but the government cannot point to a single case where a series of separately chargeable, completed offenses that were aimed at numerous unidentified victims and were separated by months or years and span some 16 years could be fairly characterized as a single "continuing scheme."

The government's assertion that this is a single scheme because "the defendant used the same leverage (his union presidency) to extort and misappropriate the same thing of value (personal services) from the same small group of individuals (Local 812's officers and employees)" (Opp. 7) is meritless.   The indictment alleges that Rumore extorted a variety of "things of value" from a  number of unidentified individuals.   The fact that he held "his union presidency" throughout the relevant time period does not render every alleged act of extortion part of a single scheme any more so than a physically imposing defendant necessarily engages in a single scheme when he extorts multiple victims at different times by threat of force.

Indeed, the absurdity of the government's position is perfectly illustrated by the cases it cites to support application of the "single continuing scheme" principle.   See Opp. 6.   For example, in *United States* v. *Daley*, 454 F.2d 505, 507 (1st Cir. 1972), the defendant negotiated three fraudulent checks against a union account in May 1966 and three more against the same account in December 1966.   As the government notes (Opp. 6), the court stated that

8

"embezzlement, by its very nature, contemplates that several separate transactions may [result] from a single, continuing scheme, and may therefore be charged in a single count." 454 F.2d at 509. But the government fails to mention that the government there had *not* alleged that all six checks were part of a single scheme; rather, the government (quite reasonably) had charged the May checks in one count and the December checks in another. Thus, one "scheme" encompassed "a two or three day period" in May and the other totaled (perhaps) three days in December, *id.* at 509 n.7 – hardly a ringing endorsement of the 16-year "scheme" the government hopes to cobble together here. The other decisions upon which the government relies show similarly reasonable restraint in defining the scope of a single scheme. See *United States* v. *Pavloski*, 574 F.2d 933, 937 (7th Cir. 1978) (acts against a single victim across three-year span); *United States* v. *Jasper*, 2003 WL 1345231 (S.D.N.Y. 2003) (identical acts against single victim bank over two-and-a-half-year period) (indictment available at 2000 WL 35604881); *United States* v. *Atiyeh*, 330 F. Supp. 2d 499 (E.D. Pa. 2004) (acts against a single "victim" account over three-and-a-half years); *United States* v. *Aliperti*, 867 F. Supp. 142 (E.D.N.Y. 1994) (six-year "scheme"); *United States* v. *Albunio*, 1992 WL 281037 (E.D.N.Y. 1992) (two-year "scheme"); *United States* v. *Cervone*, 1988 WL 155641 (E.D.N.Y. 1988) (six-year "scheme"). None of these cases comes close to suggesting that the broad swath of conduct at issue here – numerous (unidentified) victims, at least 20 discrete acts. and a span of 16 years – could fairly be characterized as a single scheme.

9

**III.     The Government's Theory Of Embezzlement Is Legally Flawed**

As we explained in our initial motion (at 12-15), the indictment alleges an utterly unprecedented theory of "embezzlement" under 29 U.S.C. § 501(c). The government does not dispute that fact, and it fails to identify a single decision in which Section 501(c) has been employed to criminally punish a union official for "embezzling" personal services from union employees. Nor does the government attempt to explain how its novel application squares with settled principles of statutory interpretation, which require courts to give disputed terms their "ordinary or natural" meaning, *Smith* v. *United States*, 508 U.S. 223, 228 (1993), to read them in their proper context, *id.* at 229, and to resolve any ambiguities in the defendant's favor, see *United States* v. *Santos*, 128 S. Ct. 2020, 2025 (2008) (opinion of Scalia, J.).

Perhaps most notably, the government fails even to address the fact that the Second Circuit has held in analogous circumstances that employers do not hold a legally cognizable "property" interest in their employees' time. See *In re Subpoenas to Local 478*, 708 F.2d 65 (2d Cir. 1983); see also *All Aire Air Conditioning* v. *City of New York*, 979 F. Supp. 1010, 1015-16 (S.D.N.Y. 1997) (same). Instead, the government points to decisions from *other* jurisdictions applying *other* statutes to punish the misappropriation of employee services. Opp. 7-8. But the fact that the government has successfully pursued similar allegations against defendants under other statutes – each of which employs distinct definitions of prohibited conduct and property interests – cannot justify expanding Section 501(c) to criminalize the conduct at issue here.

## CONCLUSION

For the reasons stated above and in our initial motion to dismiss, the acts alleged to have occurred before December 17, 2002, are time-barred and must be dismissed. In addition, the

indictment is impermissibly duplicitous and must be dismissed. Moreover, Count Two of the

indictment states a legally defective theory of embezzlement under 29 U.S.C. § 501(c) and must

be dismissed.


Dated:  July 1, 2008
New York City, New York

                                          Respectfully submitted,

                                          Thomas P. Puccio, Esq.
                                          Law Offices of Thomas P. Puccio
                                          Attorney for Anthony Rumore
                                          230 Park Ave, Suite 301
                                          New York, NY   10169
                                          (212) 883-6383

TO:  Michael A. Levy
      Assistant United States Attorney
      Southern District of New York
      1 St. Andrews Plaza
      New York, NY 10007

11